WILLIAMSON ET AL. V. WACHENHEIM ET AL.

1. **Fraudulent Conveyance:** INTENT: KNOWLEDGE OF VENDEE. The conveyance of all his tangible property by one against whom suits are pending, will warrant the court in finding that the conveyance was fraudulent as to the vendor; and if the vendee had knowledge of the fraudulent intent of his grantor, or had notice of such facts as would have put a man of ordinary prudence upon inquiry, which, if made with ordinary diligence, would have led to the knowledge of the fraudulent purpose of the vendor, his title to the property will not be protected, notwithstanding he paid a sufficient consideration therefor.

*Appeal from Warren Circuit Court.*

SATURDAY, APRIL 22.

THE defendant Wachenheim was the owner of a half-lot in the city of Indianola, and also a tract of real estate adjoining the city. On the 5th day of June, 1876, he conveyed the last named premises to his co-defendant Boehler, and on the 22d of January, 1877, he conveyed the half-lot to Boehler. On the 12th day of January, 1878, the plaintiffs commenced an action against the defendant Wachenheim, claiming of him $500 for professional services. The action was commenced by attachment, which was levied upon said real estate. On March, 15, 1878, a judgment was rendered for the plaintiffs for $500, and special execution awarded against the attached property, upon which a sale was had to the plaintiffs, May 6, 1878, and on July 19, 1879, a sheriff's deed of the property was made to the plaintiffs. By this action, which was commenced in February, 1880, it is sought to set aside and cancel the conveyances made by Wachenheim to Boehler upon the ground that the same were made for the purpose of cheating and defrauding the plaintiffs and others, creditors of Wachenheim. Issue having been joined there was a trial to the court and a decree was entered for the plaintiffs. The defendants appeal.

*P. F. Bartle* and *H. McNeil*, for appellants.

*Henderson & Berry*, for appellees.

ROTHROCK, J.—I. As to the conveyance made in June, 1876, there is no foundation in the evidence for the decree. There is no evidence whatever that it was made with the intent or purpose to hinder, delay or defraud creditors. It does not appear that Wachenheim was indebted to any one at that time, nor that he made the conveyance in contemplation of incurring indebtedness thereafter. The land conveyed adjoined the city of Indianola. The city authorities instituted proceedings to annex the land to the municipality, and the conveyance was made to make one more freeholder to resist the proposed annexation. It was done under the advise of the plaintiff as counsel. Under these circumstances the court should have entered a decree quieting the title of Boehler to the land conveyed to him in June, 1876, as prayed in a cross-petition filed by him.

II. The main controversy is as to the half-lot conveyed in January 1877. Counsel for appellants make some question in regard to the validity of the claim of plaintiffs for counsel fees. That question has been adjudicated. Whether unjustly or not is a question which cannot now be inquired into. Some claim is made also to the effect that the plaintiffs were not creditors of Wachenheim at the time the conveyance was made. The evidence shows that at that time Wachenheim was having serious trouble on account of a certain indictment for the unlawful sale of intoxicating liquors, and a civil action was pending against him in which $5,000 was claimed as damages by the wife of one Lippencott for the alleged unlawful sales of intoxicating liquor to him. In short, Wachenheim had established himself at or near Indianola, at a place which he named and designated as the "Blue Goose," for the purpose of selling intoxicating liquors. He was prosecuted before a justice of the peace upon some thirteen informations. It was sought to an-

1. FRAUDU-LENT convey-ance : intent: knowledge of vendee.

nex his property and place of business to the corporation and bring it within the city which he resisted by legal proceedings. In all these prosecutions and proceedings the plaintiffs were his legal advisers and counsel. We think it sufficiently appears that he was indebted to them when he made the conveyance.

The conveyance was made as has been said on the 22d of January, 1877. The civil action for $5,000 damages was then pending. There had been a trial on the indictment and a verdict of guilty had been returned, and the cause was standing on a motion for a new trial. A few days afterwards the motion was overruled and a fine of $200 and $175 costs was imposed. The civil action was afterwards tried and a judgment of $187 was rendered against Wachenheim. After the conveyance of the property he had no real estate and so far as appears very little property of any kind, except it was the proceeds of the property conveyed. We think the facts fully warranted the court in finding that the conveyance was fraudulent so far as Wachenheim was concerned. It is strenuously insisted, however, that the purchase by Boehler was made in good faith, that he paid the full value for the property without any purpose or intent to aid Wachenheim to defraud, hinder or delay his creditors, and without any knowledge that such was the intent of Wachenheim.

Counsel for the respective parties do not seem to differ as to the law governing cases of this character. A large number of authorities are cited upon the question, which it is not necessary to cite here. The rule is well understood. It is stated in *Jones v. Hetherington*, 45 Iowa, 681, as follows:

"A fraudulent intent upon the part of the purchaser is not necessary to be established to defeat the sale. It is sufficient if it be shown that he knew of the fraudulent intent of the seller, or had notice of such facts as would have put a man of ordinary prudence upon inquiry, which inquiry made with ordinary diligence would have led to a knowledge of the fraudulent purpose or intent of the seller." And see, also, *Zuver v. Lyons*, 40 Iowa, 510.

Tested by this rule we are satisfied that the Circuit Court correctly found that the purchase was not made in good faith by Boehler. There are many facts in evidence which lead to this conclusion. A few of them will be mentioned. Boehler was a resident of Des Moines. He had seen the property but once, which was some time before the conveyance, and then not with a view of examining it. ·No contract of purchase was made, nor bargain concluded. There was an informal talk between the parties in which Boehler said that he would give $900 for it. The conveyance was made at Indianola and put on record, and afterwards taken to Boehler at Des Moines.

His first knowledge that he ·had become a purchaser was when the deed was delivered to him. It is claimed by both parties to the conveyance that soon after it was made Boehler paid Wachenheim $500 in money, and that he paid him $400 in a year thereafter. No note, or other obligation was taken for any of the purchase-money.

We think it is very clearly shown that Boehler knew of all the trials and tribulation Wachenheim was having at Indianola in the prosecution of his business. He was his friend and one of his bondsmen for his appearance to answer to the indictment. He had no use for the property conveyed to him, and certainly could not have bought it upon speculation, for if he paid $900 for it there was no speculation in it. Without further reference to the evidence we may say that we are well satisfied that Boehler was not a good faith purchaser, whether he paid the $900 or not. "Where a vendor conveys property with intent to defraud his creditors and such fraudulent intent is participated in by the vendee, his title to the property will not be protected notwithstanding he paid a sufficient consideration therefor." *Chapel et al. v. Clapp*, 29 Iowa, 191.

MODIFIED AND AFFIRMED.