FIRST NATIONAL BANK OF LINN GROVE, Appellant, v. E. C. KINDWALL et al., Appellees.

**ATTACHMENT: Levy and Lien—Real Estate—When Levy, Lien, and Notice Effected.** A levy on real estate under a writ of attachment is *made* and a lien is *created* and notice to third parties *effected* by the proper signed entry of the sheriff *on the incumbrance book* in the office of the clerk of the district court. (Sec. 12104, Code of 1924.) (Prior to the Code of 1897, the levy was made and lien was created by the proper signed return of the sheriff *on the writ of attachment,* and notice to third parties was effected by the proper signed entry of the sheriff on the incumbrance book. Secs. 3010, 3022, Code of 1873.)

**ATTACHMENT: Levy and Lien—Entry on Incumbrance Book—Sufficiency.** A lien on real estate is effected under a writ of attachment by a duly signed entry in the incumbrance book wherein the land is described as "SE¼, Sec. 8-91-38 in Buena Vista County, Iowa."

Headnote 1:  6 C. J. p. 235.  Headnote 2:  6 C. J. pp. 235, 253.

*Appeal from Buena Vista District Court.*—F. C. DAVIDSON, Judge.

DECEMBER 17, 1925.

ACTION at law upon a promissory note, aided by a writ of attachment which the sheriff purported to levy upon real estate. The intervener set up a mortgage, executed after the date of the purported levy of attachment, and taken by the intervener to secure a pre-existing debt. It challenges the validity of the levy of the writ of attachment, and claims priority for its mortgage. The district court established the mortgage of the intervener as a prior lien, and the plaintiff has appealed.—*Reversed.*

*Bailie & Edson,* for appellant.

*Heald, Cook & Heald,* for appellees.

EVANS, J.—I.   The plaintiff sued out a writ of attachment, which the sheriff purported to levy upon the defendant-debtor's land on August 2, 1924.  On August 9th, following, the debtor-defendant executed a mortgage to the inter-

**1. ATTACHMENT: levy and lien: real estate: when levy, lien, and notice effected.**

vener, upon the same land, to secure a pre-existing debt.  The claim of invalidity of the levy of the attachment contended for by the intervener is that the procedure adopted by the sheriff was not legally effective to work a levy.  What the sheriff did in making such purported levy was to make upon the incumbrance book the entry provided for by Section 3899 of the Code of 1897.  He did not at that time, nor before August 9th, enter and sign a written return upon the back of the writ in his hands.  He did, however, after August 9th, and within the time required by statute, make his written return upon the writ, and did file the same with the clerk of the district court. The question presented is whether it was essential to the mode of levying the writ that the written return should have been entered and signed by the sheriff upon the writ, and whether this was a condition precedent to the validity of the levy in the first instance.

The contention for the appellee, which was sustained by the district court, is substantially as follows:   That, in order to make a valid levy, the written return of such levy must be indorsed upon the writ and signed by the sheriff; that, until such return is so indorsed upon the writ and signed, no valid levy has been made; that no valid levy can be made by a mere entry in the incumbrance book in compliance with Section 3899, Code of 1897; that the requirement of Section 3899 is for procedure subsequent to the levy; and that the only function of such procedure is to give notice to third parties.

This contention by the appellee is in accord with the statutes as they were prior to the Code of 1897.  Our statutes then in force were construed to this effect by this court in the following cases:  *Collier v. French,* 64 Iowa 577; *First Nat. Bank v. Jasper County Bank,* 71 Iowa 486; *Sioux Valley St. Bank v.*

*Kellog*, 81 Iowa 124; *Shoonover v. Osborne Bros.*, 111 Iowa 140. The statute was materially changed in the Code of 1897, and the question before us involves a consideration of the effect of such change.

Under the Code of 1873, the only method of levying a writ of attachment was set forth in Section 3010, as follows:

"The sheriff shall return upon every attachment what he has done under it. The return must show the property attached, the time it was attached, and the disposition made of it, by a full and particular inventory; also the appraisement above contemplated, when such has been made. * * * And where real property is attached, the sheriff shall describe it with certainty to identify it, and, where he can do so, by a reference to the book and page where the deed under which the defendant holds is recorded. He shall return with the writ all bonds taken under it. Such return must be made immediately after he shall have attached sufficient property, or all that he can find; or, at latest, on the first day of the first term on which the defendant is notified to appear."

Section 3022 of the same Code provided:

"No levy of attachment on real estate shall be notice to a subsequent vendee or incumbrancer in good faith, unless the sheriff making such levy shall have entered in a book which shall be kept in the clerk's office of each county by the clerk thereof, and called 'incumbrance book,' a statement that the land, describing it, has been attached, and stating the cause in which it was so attached, and when it was done and signed by such sheriff; and such book shall be open as other books kept by such clerk to public inspection."

In construing these two sections, it was consistently held, in the cases cited above, that the levy was to be made pursuant to the method pointed out in Section 3010, and that compliance with the requirements of that section was essential to a valid levy; that Section 3022 provided only a method of giving *notice* to third parties, and availed nothing to the plaintiff unless a levy was first made, pursuant to Section 3010.

In the revision of the statutes, as set forth in the Code of 1897, Section 3010 of the Code of 1873 was eliminated from its place at the head of the line of levy procedure, and Section

3022 of such Code was supplanted and somewhat enlarged by Section 3899, as follows:

"Real estate or equitable interests therein *may be attached, and the levy* shall be a lien thereon from the time of an entry made and signed by the officer making the same upon the incumbrance book in the office of the clerk of the county in which the land is situated, showing the levy, the date thereof, name of the county from which the attachment issued, title of the action, and a description of the land levied on."

A levy of a writ upon property implies a seizure of possession. The purpose of the levy of a writ of attachment on real estate is to impress a lien only. To seize the possession of real estate for the purpose of impressing a lien, is impracticable. The purpose of such a levy can be accomplished by a symbolical seizure. It is the province of the statute to select and to define the symbol whereby land may be seized and charged with the lien, without interfering with the actual possession thereof. In no other way could uniformity of method or symbol be attained. The method of levying such a writ is, therefore, statutory. Up to the adoption of the Code of 1897, Section 3010 of the Code of 1873 was the controlling statute as to the method of levy. It stood first chronologically in the statutory procedure for levying an attachment upon real property. Section 3022 may be re-garded either as supplanted or as materially amended by Section 3899, Code of 1897, as above quoted. The appellee contends that the latter section should be construed as the combined equivalent of the former Sections 3010 and 3022. To do so would wholly ignore the express terms of the new section. It will be noted that Section 3022 of the Code of 1873 provided that "no levy of attachment on real estate shall be *notice to a subsequent vendee*," etc. This provision is wholly eliminated in Section 3899. This provision of Section 3022 was given full effect in our former decisions. The substance of our holding was that the levy was made and the lien acquired pursuant to Section 3010, and that it could only be done by a written return upon the back of the writ; that the procedure under Section 3022 was for the purpose only of imparting constructive *notice* to third parties. Under Section 3899, Code of 1897, the *lien* is created by the entry in the incumbrance book. No reference is

here made to the function of *notice* to third parties. Under the former law, the *lien* was acquired by the levy, and the levy was made by a return on the writ. *Notice* was imparted pursuant to Section 3022. Under Section 3899, the entry in the incumbrance book becomes essential to the levy, even against the attachment debtor. Until such entry is made, there is no *lien.* The necessary implication is that, when such entry is properly made, a *lien* is thereby acquired.

We do not overlook that the substance of Section 3010 is later incorporated in Section 3923 of the Code of 1897, under the caption "Sheriff's Return." The function of Section 3923 is entirely consistent with our construction of Section 3899. Both in the Code of 1873 and in that of 1897, the procedure under a writ of attachment purported to be set forth chronologically. Section 3010 of the Code of 1873 was first in the order of procedure, so far as it pertained to a levy upon real estate. From this position it was transposed. in the Code of 1897, and became a part of the later stages of the procedure. The function of Section 3923 is to instruct the sheriff as to the formal requisites to his return upon the writ. Our former holding, under the Code of 1873, that the function of Section 3022 was to impart *notice,* is superseded by the complete elimination of that provision of Section 3022. It is suggested that Section 3899 was otherwise construed by us in *Byers & Co. v. McEniry,* 117 Iowa 499. That case had to do with the latter half of Section 3899, which is not above quoted. That part of Section 3899 dealt with the levy of an attachment upon real estate where the legal title was in another than the attachment debtor. This was the portion of the statute considered in the *Byers* case. That decision has no reference whatever to that part of the section which we have quoted herein.

The argument for the appellant is that the very purpose of the change made by the Code of 1897 was to simplify the method of a levy of attachment on real estate. We are constrained to this view, as the more practical and reasonable one. The provisions of the Code of 1873 involved something of a pitfall, into which the sheriff too frequently fell, as indicated by the appeals prosecuted to this court in the cited cases. When the sheriff entered his levy upon the public record known as the

incumbrance book, it was not an unnatural or unreasonable impression upon his mind that such an act was more solemn and more important, as a method of duty, than was the mere written recital of what he had done upon the back of the writ, which the statute permitted him to carry in his own pocket until the first day of the next term of court. The result was that sheriffs made frequent blunders in that regard. The statutory method, therefore, proved to be quite technical, and unnecessarily so, in a practical sense. We conceive the purpose of the later statute to be to eliminate this pitfall, and to simplify the statutory method of a levy of the writ. There is no practical reason why the statute should not treat the entry upon the incumbrance book as the levy. As a symbol, such an entry serves every function of a levy, as well as the function of a notice to third persons; and no fair reason is apparent why both functions should not be served by the same act. It simplifies the formalities required of the sheriff, and it serves every purpose of justice, both to the debtor-defendant and to third parties. Under this construction of the statute, the entry in the incumbrance book becomes the *levy* and the *notice;* whereas the written return upon the writ becomes the formal and official evidence of what was done. This reverses the relative importance of the two acts as they were fixed by the Code of 1873. That the Code of 1897 has simplified the method at this point is indicated by the absence of judicial decision thereon for a period of twenty-eight years; whereas, under the Code of 1873, litigation at that point was persistent.

We hold, therefore, that a proper entry in the incumbrance book, pursuant to Section 3899, is a good levy, even though the written return upon the writ be not made until a subsequent date.

II.  Some days after the submission of the case in the district court, and before decision was announced, the appellee filed an amendment to its petition of intervention, wherein it challenged the sufficiency of the description of the real estate made in the entry on the incumbrance book. A part of the land was described as S. E. ¼ Section 8-91-38. The point stressed is that the figures 8-91-38 mean nothing. It is a question of

2. ATTACHMENT:
   levy and lien:
   entry on incumbrance book:
   sufficiency.

grave doubt to us whether the appellee is entitled to any consideration of this question. Though the lower court permitted the amendment to be made, over the objections and exceptions of the plaintiff, it does not seem to have sustained the point. On the contrary, it confirmed the attachment, but made it subject to the mortgage of the intervener. This was done on the theory that the return on the writ was made after the execution of the intervener's mortgage, and that the levy was, therefore, subsequent to the intervener's mortgage. But the description of the land was uniform in the entry in the incumbrance book, in the notice to the defendant, and in the return upon the writ of attachment.

Moreover, the intervener's original petition expressly alleged a proper entry in the incumbrance book. On the trial, it was stipulated that the notice to the attachment defendant was good in all respects. The description in this notice was no better than that in the incumbrance book, so far as the record discloses. Furthermore, the record before us indicates that the incumbrance book of Buena Vista County contained upon its pages a certain blank form, which was arranged for the convenience of the sheriff in making his entries. Printed headings appeared above the blank spaces, which were to be filled by the sheriff. If we read the descriptions of real estate here complained of under and in the light of the printed headings, it is made to appear that the real estate therein described was in Buena Vista County, Iowa. The words and figures above quoted are well understood in real estate parlance. They speak with reference to base lines and meridians, which are fixed by law. All descriptions of real estate in Buena Vista County are referable to one base line and one meridian, and these are fixed by law. When it is considered further that Section 3933, Code of 1897, expressly calls for liberality in the construction of that chapter, and that no attachment shall be quashed or property released for any defect of proceeding, if it be one which can be cured by amendment, it leaves little standing room for intervener at this point.

We hold that the description "S. E. ¼ Sec. 8-91-38 in Buena Vista County, Iowa," is sufficient to comply with the requirements of Section 3899.

We reach the conclusion that the district court erred in awarding priority of lien to the intervener, and that it should have confirmed the attachment lien, and awarded priority thereto.

The judgment is, accordingly, reversed.—*Reversed.*

Faville, C. J., and De Graff and Vermilion, JJ., concur.

Morling, J., not participating.